JL

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chris Slavick,<br><br>Plaintiff,<br><br>v.<br><br>M. Frink, et al.,<br><br>Defendants. | No.   CV-21-00208-PHX-JAT (JZB)<br><br>**ORDER** |

Plaintiff Chris Slavick, who is currently confined in the Halawa Correctional Facility (HCF) in Aiea, Hawaii, brought this pro se civil rights action pursuant to 42 U.S.C. § 1983. Defendant Case Manager C. Narvaez has filed a Motion to Dismiss for Lack of Prosecution and a separate Motion for Summary Judgment on exhaustion grounds and on the merits of Plaintiff's excessive force claim. (Docs. 34, 35.) Plaintiff was informed of his rights and obligations to respond (Docs. 39, 40), and he opposes the Motions. (Docs. 46, 48.) Defendant has filed Replies. (Docs. 47, 49.)

The Court will deny the Motion to Dismiss and require Defendant to file either a motion for an evidentiary hearing regarding exhaustion or a motion to withdraw the non-exhaustion argument.

**I.      Background**

In his Complaint, as relevant here, Plaintiff alleges that while he was in custody at the Saguaro Correctional Center (SCC) in Eloy, Arizona, Defendant Narvaez used excessive force against Plaintiff in violation of the Eighth Amendment. (Doc. 1.)

On screening the Complaint pursuant to 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment excessive force claim in Count Four against Defendant Narvaez and directed Narvaez to answer the claim. (Doc. 8.) The Court dismissed the remaining claims and defendants. (*Id.*)

**II.     Motion to Dismiss**

Defendant asks the Court to dismiss this case because Plaintiff has failed to comply with the Court's Orders and has failed to prosecute this case by repeatedly failing to participate in discovery. (Doc. 34 at 1.)

**A.     Legal Standards**

Federal Rule of Civil Procedure 37 allows the Court to sanction a party's failure to disclose, failure to comply with a Court order, or failure to appear at a deposition, and the available sanctions include dismissal of the action. *See* Fed. R. Civ. P. 37(b), (c), and (d). Severe sanctions, such as default judgment or dismissal, are warranted only in extreme circumstances. *Refac Intern., Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247, 1254 (9th Cir. 1990). Further, severe sanctions are appropriate only where a party's violations are due to willfulness or bad faith. *Id.*; *see Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011); *Conn. General Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (only willfulness, bad faith, and fault justify a sanction of dismissal); *Matter of Visioneering Const.*, 661 F.2d 119, 121 (9th Cir. 1981) (default judgment justified where party engaged in "a litany of willful discovery abuses, including failure to attend a noticed deposition"). The Court must also consider: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Dreith*, 648 F.3d 788 (internal citation and quotation omitted).

Similarly, Rule 41(b) allows a court to dismiss an action for failure to prosecute, failure to comply with the Federal Rules of Civil Procedure, failure to comply with the court's local rules, or failure to comply with court orders. *See* Fed. R. Civ. P. 41(b); *Link*

*v. Wabash Railroad Co.*, 370 U.S. 626, 629– 30 (1962) (a court's authority to dismiss for lack of prosecution is necessary to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the district courts); *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 689 (9th Cir. 2005) (court may dismiss under Rule 41(b) for failure to prosecute or comply with rules of civil procedure or the court' s orders); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the court).  The standards governing dismissal for failure to comply with a court order are basically the same under either Rule 37(b) or Rule 41(b). *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987). "A Rule 41(b) dismissal 'must be supported by a showing of unreasonable delay.'" *Omstead v. Dell, Inc.*, 594 F.3d 1081, 1084 (9th Cir. 2010) (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)) *overruled on other grounds by Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1117 (9th Cir. 2020).  "In addition, the district court must weigh the following factors in determining whether a Rule 41(b) dismissal is warranted: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Omstead*, 594 F.3d at 1084 (quoting *Henderson*, 779 F.2d at 1423).

### B. Procedural History

On July 28, 2021, the Court issued a Scheduling Order that set the deadline for discovery disputes as January 24, 2022.  (Doc. 16.)  The Scheduling Order requires the parties to meet and confer in an attempt to resolve discovery disputes before bringing the disputes before the Court.  (*Id.*)  On November 23, 2021, Defendant filed a Motion for Extension of the Scheduling Order Deadlines.  (Doc. 18.)  In a November 29, 2021 Order, the Court granted the Motion and set the deadline for discovery motions as April 25, 2022.  (Doc. 19.)

On January 21, 2022, Defendant filed a second Motion for Extension of the Scheduling Order Deadlines.  (Doc. 20.)  In a January 24, 2022 Order, the Court granted

Defendant's Motion and set the deadline for written discovery as May 25, 2022 and the deadline for discovery motions as July 22, 2022. (Doc. 21.)

On April 22, 2022, Defendant filed at Third Motion for Extension of Time to Complete Discovery. (Doc. 22.) In an April 29, 2022 Order, the Court granted the Motion and set the deadline for written discovery as August 23, 2022. (Doc.23.)

On September 26, 2022, Defendant Narvaez filed a Motion to Compel Or, In the Alternative, Dismiss for Failure to Prosecute. (Doc. 24.) On October 11, 2022, Plaintiff filed a "Report of Lying and Deliberate Deceptions by Defendant to the Court," which the Court construed as Plaintiff's response. (Doc. 25.) In an October 27, 2022 Order, the Court granted Defendant's Motion to Compel. (Doc. 26.) The Order states,

> On or before November 30, 2022, Plaintiff shall provide full, accurate, and detailed responses to Defendant's August 6, 2021 discovery requests, including Defendant's First Set of Interrogatories, Requests for Production, and Requests for Admission. **Plaintiff is advised that failure to comply with this Court's order may result in sanctions up to and including dismissal of this action.**

(*Id.*) (emphasis in original.) The Court set the deadline for discovery motions as December 16, 2022. (*Id.*)

On November 28, 2022, Defendant filed a Notice of Service of Discovery. (Doc. 28.) On December 12, 2022, Defendant filed a Notice of Plaintiff's Noncompliance with the October 27, 2022 Order. (Doc. 29.) On January 10, 2023, Defendant filed a Motion for Extension of Time to Extend Dispositive Motions Deadline. (Doc. 31.) In a January 31, 2023 Order, the Court granted Defendant's Motion and set the deadline for dispositive motions as February 17, 2023. (Doc. 32.)

### C. Defendant's Motion

In his Motion to Dismiss, Defendant states the following:

On August 6, 2021, Defendant Narvaez propounded his First Set of Interrogatories, Requests for Production, and Requests for Admissions on Plaintiff, which seek information regarding Plaintiff's efforts to exhaust administrative remedies prior to filing this lawsuit

and are likely dispositive of the issue in this case. (Doc. 24 at 2.) Plaintiff was required to respond by September 10, 2021, and he failed to do so. (*Id.*)

On October 14, 2021, counsel sent Plaintiff a letter, notifying him of his outstanding discovery responses, in an attempt to meet and confer prior to bringing the issue before the Court. (*Id.*) Plaintiff did not respond. (*Id.*) On January 18, 2022, counsel contacted the HCF to schedule a telephonic meet and confer with Plaintiff to discuss his refusal to respond to Defendant Narvaez's discovery. (*Id.*) Counsel was notified that Plaintiff was unable to use the facility telephone as the facility was in lockdown status due to a COVID-19 outbreak. (*Id.*) On January 21, 2022, counsel sent Plaintiff another letter, again notifying him of his outstanding discovery responses. (*Id.*) Counsel also notified Plaintiff that the letter served as Defendant Narvaez's attempt to meet and confer with Plaintiff pursuant to the Court's Scheduling Order prior to bringing the issue before the Court. (*Id.*) Plaintiff again failed to respond. (*Id.*)

On August 3, 2022, counsel for Defendant called HCF and was able to speak with Plaintiff on that date. (*Id.*) Counsel for Defendant advised Plaintiff of his outstanding discovery responses, Defendant's multiple attempts to meet and confer on the outstanding discovery, and Defendant's intent to file a Motion to Compel responses to the outstanding discovery. (*Id.* at 2-3.) Plaintiff did not provide an explanation for his failure to respond but advised that he was unsure whether he received the discovery requests. (*Id.* at 3.) Counsel for Defendant agreed to provide a courtesy copy of the discovery requests to Plaintiff, and Plaintiff agreed to respond within 30 days of receipt of the requests. (*Id.*) The discovery requests were delivered to HCF on August 8, 2022. (*Id.*) Plaintiff was required to respond by September 12, 2022, but he failed to do so. (*Id.*) To date, Plaintiff has not responded to Defendant Narvaez's discovery.

### D.     Plaintiff's Response

In his Response to Defendant's Motion to Dismiss, Plaintiff asserts that he did not receive the Court's February 21, 2023 Order, which notified that him he had until March 3, 2023 to file a response to Defendant's Motion to Dismiss, until March 1, 2023. (Doc.

46 at 1.) Plaintiff alleges he was wrongfully denied access to his legal property at HCF, although he showed HCF staff the Court's Order. (*Id.*) Plaintiff asserts that "access was only allowed due to persistent requests of entitled rights" under DPS/HCF policy and Plaintiff's due process rights. (*Id.*) Plaintiff argues he has not had a fair opportunity to respond to the Motion to Dismiss.

### E. Discussion

At the outset, the Court the Court rejects Defendant's assertion that Plaintiff's Response was untimely. Under the prison mailbox rule, a document is deemed "filed" when delivered by the prisoner to a prison official for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). Plaintiff signed the Response on March 3, 2023. Thus, under the prison mailbox rule, Plaintiff's Response was timely.

Next, the Court addresses Plaintiff's contention that he has not had a fair opportunity to respond to the Motion to Dismiss. On February 22, 2023, Plaintiff filed a Motion for Extension of Time to respond to the Motion to Dismiss. (Doc. 42.) In a February 24, 2023 Order, the Court denied the Motion because it did not state the length of the extension Plaintiff sought, and the Motion was therefore overly vague. (Doc. 43.) The Court noted that the deadlines to respond to Defendant's Motions had not expired, and to the extent Plaintiff wished to seek a limited extension of those deadlines, the Court would consider such a motion. (*Id.*) Plaintiff did not seek another extension of time. Plaintiff signed his Response to the Motion to Dismiss on March 3, 2023, and it was docketed on March 14, 2023. (Doc. 46.)

In his Reply to Plaintiff's Response, Defendant notes that Plaintiff is currently incarcerated in the physical and legal custody of the Hawaii Department of Public Safety (HDPS) at HCF in Honolulu, Hawaii, and is no longer in the physical custody of CoreCivic. (Doc. 47 at 2.) Defendant asserts that he has no contact with Plaintiff or any control over his conditions of confinement at HCF. (*Id.*)

Defendant further argues that although Plaintiff complains about an alleged gang assault and denial of access to his legal property, Plaintiff does not explain how he was

able to prepare and file his non-substantive Response or his Emergency Notice and Motions for Extension and Protective Order, yet not respond to Defendant's Motion to Dismiss. (*Id.* at 5.) Defendant notes that Plaintiff does not attach any medical records to substantiate his alleged injuries that supposedly prohibit him from responding to motions that seek to dismiss his case. (*Id.*) Defendant contends that Plaintiff's failure to substantively respond to Defendant's Motion to Dismiss (and especially where his filings demonstrate that he could have done so) is a concession of Defendant's arguments. (*Id.* at 5.)

Although Plaintiff is no longer in CoreCivic's custody, whether Plaintiff's conditions of confinement at HCF prevented him from substantively responding to Defendant's Motion to Dismiss is relevant to whether the Court should dismiss this case for failure to prosecute. That Plaintiff could file a *non*-substantive Response does not necessarily mean he also could have filed a substantive Response by the deadline, particularly where he received the Court's Order two days before the deadline to file a response. In any event, the Court's decision regarding Defendant's Motion for Summary Judgment—whether on exhaustion grounds or on the merits of Plaintiff's excessive force claim—will moot the Motion to Dismiss. The Court will therefore deny the Motion to Dismiss.

**III. Motion for Summary Judgment**

Defendant moves for summary judgment on the ground that Plaintiff failed to exhaust administrative remedies before he filed this case and on the merits of Plaintiff's claim. For the reasons discussed below, the Court cannot resolve the exhaustion issue on this record and will therefore require Defendant to either move for an evidentiary hearing or withdraw the non-exhaustion argument.

**A.   Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying

those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**B.     Exhaustion**

**1.     Legal Standard**

Under the Prison Litigation Reform Act (PLRA), a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534

U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If the defendants move for summary judgment for failure to exhaust and the evidence shows that the plaintiff did, in fact, exhaust all available administrative remedies, it is appropriate for the court to grant summary judgment sua sponte for the nonmovant on the issue. *See Albino*, 747 F.3d at 1176 (pro se prisoner did not cross-move for summary judgment on issue of exhaustion, but because he would have succeeded had he made such a motion, sua sponte grant of summary judgment was appropriate).

**2. Facts**

**a. Grievance Procedure**

CoreCivic's[1] Policy 14-5, Inmate/Resident Grievance Procedures, governs the grievance process at SCC. (Doc. 36-3 at 13.) Policy 14-5 provides that a grievance is a "written complaint concerning the facility conditions, treatment, policies, and/or procedures which is believed to personally affect the inmate/resident in a negative manner." (*Id.*) New prisoners at SCC are informed of the informal resolution process and grievance procedure upon arrival to SCC. (*Id.* at 14.) SCC staff provide instruction on the

---

[1] CoreCivic operates SCC.

inmate grievance procedure to prisoners during the admission orientation process, including the difference between grievable and non-grievable matters, how to exhaust administrative remedies at SCC, and the proper procedures and timelines for doing so, which is delineated in the Inmate Handbook and the policy. (Decl. of J. Pagnani, Doc. 36-2 at 4 ¶ 15.) Plaintiff received instruction on the inmate grievance procedure on November 29, 2018. (*Id.* ¶ 17.)

Policy 14-5 also provides that a summary of the grievance procedure is included in the Inmate Handbook. (*Id.* ¶ 18.) The 2020 SCC Inmate Handbook was in effect at all times relevant to the allegations in Plaintiff's Complaint. (*Id.* ¶ 20.) Each prisoner receives an Inmate Handbook upon his arrival to SCC. (*Id.* ¶ 21.) When the Inmate Handbook is updated, the updated Handbook is distributed to all prisoners. (*Id.*) Plaintiff received the 2018 Handbook upon admission and the 2020 Handbook when the 2018 Handbook was updated. (*Id.* ¶ 21.) The grievance process did not change between 2018 and 2020. (*Id.* ¶ 23.)

Policy 14-5 requires the grievance policy to be available at the SCC law library. (Doc. 36-3 at 14.) A summary of SCC's grievance requirements is also posted on the bulletin boards in all housing units. (*Id.*) The Policy provides that all staff are trained on the grievance policy during pre-service and in-service training. (*Id.*) All prisoners, regardless of disciplinary status, classification, etc., can use the grievance procedure. (*Id.*) The Policy proscribes retaliation, reprisal (that is, any adverse action or threat of adverse action against a prisoner), harassment, or discipline for use of or participation in the grievance process. (*Id.* at 15.)

To begin the grievance process, a prisoner must first submit an Informal Resolution (14-5A Form). (*Id.* at 17.) Prisoners are required to use the informal resolution process concerning questions, disputes, or complaints prior to the submission of a formal grievance. *Id.* (*Id.*) To submit an Informal Resolution, a prisoner must use the 14-5A form and submit it to his Case Manager. (*Id.*) The prisoner must submit the 14-5A form within seven (7) calendar days of the alleged incident being complained about. (*Id.* at 18.) If the prisoner

fails to use the appropriate form or submits the Informal Resolution after the seven (7) day deadline, it is returned to the prisoner. (*Id.*)

Upon receipt of a 14-5A form, the staff member assigned to review the Informal Resolution is required to: 1) conduct an initial meeting with the prisoner to discuss the issue; 2) meet with all staff members involved in the issue; 3) research necessary information to determine if a remedy is possible; 4) develop a response to present to the prisoner; 5) ensure the prisoner receives a copy of the completed 14-5A form; and 6) ensure any agreed upon remedies are completed. (*Id.* at 17.) The original completed 14-5A form is maintained in the Grievance Coordinator's office, and a copy is provided to the prisoner. (*Id.* at 18.)

If the prisoner is not satisfied with the response, he has five (5) calendar days to submit an Inmate Grievance Form (14-5B). (*Id.* at 19.) The 14-5B form must be used to file a formal grievance. (*Id.*) The prisoner must complete the first page of the 14-5B form and place it in a sealed envelope marked "Grievance." (*Id.*) The sealed envelope must then be placed in the grievance mailbox. (*Id.*) The Grievance Coordinator must check the grievance mailbox daily. (*Id.* at 20.)

Upon receipt of a grievance, the Grievance Coordinator reviews the grievance to ensure it is correctly submitted and the required documentation is attached. (*Id.*) If a grievance is not properly submitted (incorrect form, past the deadline, etc.), it is returned to the prisoner. (*Id.*) The Grievance Coordinator then assigns a number to the formal grievance, documents the formal grievance on the Grievance Log, and forwards the formal grievance to the appropriate staff member for a response. (*Id.*) Each formal grievance is responded to with a written explanation for approval/disapproval. (*Id.*) This response is documented on page two of the 14-5B form and given to the prisoner, in person, for signature. (*Id.*) The prisoner receives a complete copy of the formal grievance and any corresponding attachments. (*Id.*) Each prisoner receives a response to the formal grievance within fifteen calendar days unless a response extension is required by facility personnel. (*Id.*)

If a prisoner is not satisfied with the grievance decision, then he may appeal the grievance decision. (*Id.* at 21.) Prisoner are entitled to appeal all adverse decisions, even those made on a purely procedural basis, including but not limited to the expiration of a time limit. (*Id.*) The prisoner must file the Appeal within five calendar days of the grievance response date listed on the 14-5B form. (*Id.*) All appeals are submitted to the Grievance Coordinator and forwarded to the Warden (or his/her designee) for review and final response. (*Id.*) The Warden (or his/her designee) responds to each Appeal with a written explanation as to the Appeal decision. (*Id.*) The Warden's response is also documented on the second page of the 14-5B form and given to the prisoner, in person, and the prisoner's signature is required to document receipt of the Appeal decision. (*Id.*) The prisoner receives a complete copy of the Appeal response and any corresponding attachments. (*Id.*) The Warden's decision is final. (*Id.*)

All Informal Resolutions, Formal Grievances, and Appeals are logged and maintained in a prisoner's institutional file. (*Id.* at 22.)

### b.   **Plaintiff's Grievances**

Defendant submits a Declaration of Grievance Coordinator J. Pagnani. Pagnani is familiar with and reviewed Plaintiff's institutional file to review his grievance activity while at SCC. (Pagnani Decl. ¶ 59.) Pagnani also reviewed Plaintiff's Complaint, which alleges that CO Narvaez was "present and involved" in a May 6, 2020 incident in which Navarez and another guard "continuously shoved" Plaintiff forward onto his left foot/ankle while "pulling" his left shoulder back and "bending" his fingers on both hands. (*Id.* ¶ 60.) Plaintiff further alleges that CO Narvaez mocked" his "appraisals . . . of the severe pain" inflicted. (*Id.*) Plaintiff also alleges that he was transported to the medical unit, and medical staff were "informed" that Plaintiff's injuries "were valid/documented" and that he should be transported in a wheelchair. (*Id.*)

During his incarceration at SCC, from November 18, 2018 through August 5, 2020, Plaintiff never filed an Informal Resolution, Formal Grievance, or an Appeal about any subject matter, including a grievance concerning the alleged May 6, 2020 use of force

incident involving CO Narvaez. (*Id.* ¶ 62.)

### 3. Discussion

Defendant has met his initial burden of demonstrating that there is an available administrative remedy, and Plaintiff failed to complete the remedy process. Thus, the burden shifts to Plaintiff to either show he exhausted administrative remedies, or the process was effectively unavailable to him.

#### a. Parties' Arguments

In his Response, Plaintiff does not dispute that he failed to exhaust administrative remedies with respect to his excessive force claim against Defendant. (Doc. 48.) Plaintiff asserts that when he arrived at SCC in November 2018, Warden Thomas came to Plaintiff's cell, "warned [him] not to file grievances about matters," and "threatened problems for Plaintiff at SCC if he did file as he had . . . at HCF in Hawaii." (*Id.* at 2.) Plaintiff asserts that Warden Thomas "confessed to reading several" of the grievances Plaintiff filed at HCF. (*Id.*) Plaintiff further contends the grievance policy is "clearly for outside of solitary/Hotel Bravo" because it is "not possible" to place a sealed envelope in the grievance box. (*Id.*) Plaintiff argues that he was held in solitary confinement in the Restrictive Housing Unit (RHU) from May 6, 2020 until August 5, 2020, and during that time, SCC staff "repeatedly bombard[ed] Plaintiff" with "fraudulent write-ups in order to bolster their scheme of preventing any grievance." (*Id.*)

In his Reply, Defendant argues that Plaintiff had the opportunity during discovery to identify any issues that prevented him from exhausting administrative remedies. (Doc. 49 at 5.) Defendant asserts that he sought information regarding Plaintiff's efforts to exhaust administrative remedies before he filed the Complaint, but Plaintiff failed to respond to Defendant's discovery requests, even after the Court granted Defendant's Motion to Compel. (*Id.*) Defendant contends Plaintiff "should not now get the benefit of presenting this new information on his alleged inability to exhaust, especially where he had the opportunity to do so during discovery." (*Id.*)

Defendant further argues that Plaintiff fails to proffer any evidence that Warden

Thomas threatened Plaintiff with "problems" and Plaintiff attaches none of the "fraudulent write-ups" he allegedly received from SCC staff. (*Id.*) Defendant asserts that Plaintiff does not argue, let alone establish, that he did not have access to grievance forms in the RHU or that he could not personally hand the forms to an officer while he was housed in the RHU. (*Id.*)

### b.    Effective Unavailability

The Supreme Court in *Ross v. Blake*, 578 U.S. 632 (2016), held that administrative procedures may be functionally unavailable if "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 644. Thus, the "available" remedies that must be exhausted are procedures that are "capable of use to obtain relief." *Id.* at 643.

The Supreme Court in *Ross* identified circumstances in which an administrative procedure may be deemed unavailable within the meaning of the PLRA: when the procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; when the procedure is "so opaque that it becomes, practically speaking, incapable of use"; and when prison administrators thwart prisoners from taking advantage of a grievance process through machination, misrepresentation, or intimidation. *Id.*

Here, Plaintiff asserts that Warden Thomas "warned [Plaintiff] not to file grievances about matters" and "threatened problems for Plaintiff at SCC if he did file as he had . . . at HCF in Hawaii." Plaintiff further asserts that while he was in the RHU, SCC staff "repeatedly bombard[ed] Plaintiff" with "fraudulent write-ups in order to bolster their scheme of preventing any grievance."

Based on the available evidence, the Court cannot resolve whether the grievance procedure was effectively unavailable to Plaintiff. Although Defendant points to the lack of documentary evidence of threats to Plaintiff regarding his grievances, Plaintiff alleges that Warden Thomas verbally threatened him, and Defendant does not dispute that Warden Thomas did so. The Court cannot resolve this factual dispute based on the documentary

1  record without making credibility determinations. *Anderson*, 477 U.S. at 249.

2      The Court will grant Defendant 14 days in which to file a motion for an evidentiary
3  hearing regarding exhaustion or a motion to withdraw the non-exhaustion argument. If
4  Defendant withdraws his non-exhaustion argument, the Court will consider the merits of
5  Defendant's motion for summary judgment on Plaintiff's excessive force claim.

6  **IT IS ORDERED:**

7      (1)   The reference to the Magistrate Judge is withdrawn as to Defendant's
8  Motion to Dismiss for Lack of Prosecution (Doc. 34).

9      (2)   Defendant's Motion to Dismiss for Lack of Prosecution (Doc. 34) is **denied**.

10     (3)   Within **14 days** of the filing date of this Order, Defendant **must file** either a
11 motion for an evidentiary hearing regarding exhaustion or a motion to withdraw the non-
12 exhaustion argument.

13     Dated this 3rd day of August, 2023.

James A. Teilborg
Senior United States District Judge